IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **GREGORY WARREN KELLY,** | ) |
| Plaintiff, | ) |
| v. | ) |
| **TOWN OF ABINGDON, VIRGINIA,** | ) Case No: |
| Serve: | ) |
| **Hon. Wayne Craig,** | ) |
| **Mayor,** | ) |
| **Town of Abingdon** | ) |
| **133 West Main Street** | ) |
| **Abingdon, VA 24210** | ) |
| | ) **JURY TRIAL DEMAND** |
| **Defendant.** | ) |

## COMPLAINT

COMES NOW, Plaintiff Gregory Warren Kelly (hereinafter, "Mr. Kelly" or "Plaintiff"), by counsel, and states as his Complaint against Defendant Town of Abingdon, Virginia (hereinafter, "Town" or "Defendant"), the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"), and state law claims, to-wit, a breach of contract.

2. Venue is appropriate as the Plaintiff and Defendant reside in Abingdon, Virginia.

1

3. Due to its contacts within the Commonwealth of Virginia, and charter by the Virginia General Assembly, Defendant avails itself to the jurisdiction of this Court.

4. As it relates to Plaintiff's ADA claims, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around July 27, 2018. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated May 22, 2019, attached hereto as **EXHIBIT A**. Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

5. Mr. Kelly, a resident of Abingdon, Virginia, was hired by The Town in or around March of 2005, and worked on a consistent, full-time basis for The Town for nearly thirteen (13) years, until his unlawful constructive discharge on or about May 7, 2018.

6. The Town is an incorporated and chartered town under the laws of the Commonwealth of Virginia.

## III. FACTUAL ALLEGATIONS

7. In or around March 1, 2005, Mr. Kelly was hired by The Town as Town Attorney and later was appointed Town Manager.

8. At the time of Mr. Kelly's appointment as Town Manager on September 7, 2006, Mr. Kelly and The Town entered into an employment contract. In relevant part, the contract provided that Mr. Kelly was due nine (9) months' severance, calculated based on Mr. Kelly's annual salary at the time he left employment. *See* Sept. 7, 2006 Town Council Meeting Minutes, attached as **EXHIBIT B**.

9. During his employment with The Town, Mr. Kelly's work performance was excellent, and met or exceeded The Town's legitimate business expectations.

10.     At all times relevant, Mr. Kelly suffered from ADA-recognized disabilities, to-wit, anxiety, high blood pressure and depression for which he has been required to take daily medication. These disabilities affected his various daily life activities, including, but not limited to, sleeping, eating, breathing, and having normal circulation.

11.     In the alternative, The Town regarded Mr. Kelly as disabled.

12.     These conditions have been exacerbated due to the often unprofessional and occasionally outrageous actions of several of Mr. Kelly's supervisors, the Town Council of Abingdon and the Mayor of Abingdon.

13.     Due to political in-fighting among Council members, Mr. Kelly's disabilities have affected his daily life activities.  Mr. Kelly worked day-to-day in a severe and pervasive hostile working environment.

14.     Despite performing his job exceptionally well, he was continuously threatened with termination if he did not do as certain council members directed despite being bound by law and a strict code of local government ethics to implement only the policies enacted by the collective majority of the council.  These threats were a pretext, masking a discriminatory animus towards Mr. Kelly's disabilities.

15.     Mr. Kelly has been subjected to insults, invasions of privacy, disclosure of confidential information, and profane and obscene messages from Town leadership and has been publicly ridiculed and defamed on several occasions.

16.     Mr. Kelly's health issues became threatening enough for his physician to inform him that he should request accommodations or remove himself from his working environment in order to protect himself from worsening and depleting health.

17.     Mr. Kelly continued to suffer from a discriminatory animus towards his disabilities and retaliation due to his disabilities and for filing Charges of Discrimination

on September 13, 2017, Charge No. 438-2017-01164 and December 27, 2018, Charge No. 438-2018-00415.

18. On January 10, 2018, Mr. Kelly requested several reasonable accommodations for his disabilities. *See* January 10, 2019 2018 letter, appended to this pleading as **EXHIBIT C**. Twelve possible accommodations were described in the letter as talking points in the interactive process. The Town refused to engage in the interactive process in any meaningful way in order to find accommodations for Mr. Kelly's disabilities.

19. Mr. Kelly only received a token communication from The Town's legal counsel several months later, in or about April of 2018, stating that The Town would engage in the interactive process. When Mr. Kelly attempted to further communicate with the Town concerning the interactive process, he did not receive further reply from the Town or the Town's legal counsel.

20. On or about May 7, 2018, due to the severe and pervasive hostile work environment targeting individuals with disabilities, Mr. Kelly had no alternative but to resign his employment. Mr. Kelly attempted to work in an untenable work environment. However, because of the abusive nature of that work environment, Mr. Kelly suffered a constructive discharge.

21. Upon information and belief, no business-related legitimate reason justified the actions The Town took against Mr. Kelly, as Mr. Kelly's work performance was excellent and, until he requested federally protected disability accommodations to manages his disabilities, he never received any discipline from his employer.

22. Accordingly, Mr. Kelly's constructive discharge was merely a pretext to unlawful discrimination and retaliation by The Town, as Mr. Kelly's constructive

discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disabilities and/or reasonable accommodations.

23. Indeed, the short temporal proximity between the time Mr. Kelly requested accommodations related to his disability and his constructive discharge supports Mr. Kelly's claims for discrimination and retaliation.

24. Mr. Kelly suffered a constructive discharge, in violation of the ADA, because The Town:

- discriminated and/or retaliated against Mr. Kelly for filing previous EEOC Charges;
- discriminated and/or retaliated against Mr. Kelly because of his disabilities and/or because of his requests for disability-related accommodations; and/or
- failed to properly accommodate Mr. Kelly's disabilities.

25. The Town never paid Mr. Kelly the severance he was due under the September 2006 employment agreement.

26. Because the actions taken by the Mayor, the Town Council, and other Town employees were taken within the scope of their employment and/or role as the statutory decision-makers for The Town, The Town is responsible for the actions of employees based upon the doctrine of *respondeat superior* and strictly liable for the actions of statutory decision-makers, such as the Mayor and Town Council.

## IV. CLAIMS

### COUNT I: CLAIM FOR DISCRIMINATION IN VIOLATION OF THE ADA

27. Mr. Kelly incorporates herein by reference the preceding paragraphs of this Complaint.

28. At all times relevant to this Complaint, Mr. Kelly was a qualified individual with a disability, pursuant to the ADA.

29. At all times relevant, Mr. Kelly suffered from ADA-recognized disabilities, to-wit, anxiety, high blood pressure and depression for which he has been required to take daily medication. These disabilities affected his various daily life activities, including, but not limited to, sleeping, eating, breathing, and having normal circulation.

30. In the alternative, Mr. Kelly was regarded by The Town as having such impairments.

31. At all times relevant, however, Mr. Kelly could perform the essential functions of his job as Town Attorney or Town Manager, as the case may be, with or without an accommodation, depending on the specific essential function.

32. Prior to his requests for accommodations, Mr. Kelly was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of The Town. Mr. Kelly did not receive negative performance evaluations except as retaliation for having disabilities and/or asking for reasonable accommodations.

33. Mr. Kelly revealed his disabilities to his supervisors at The Town, and requested the reasonable accommodations.

34. The Town discriminated and retaliated against Mr. Kelly by refusing to appropriately engage in a dialogue with him with regard to disability accommodations,

ultimately denying Mr. Kelly's accommodation requests, threatening and/or harassing him, and treating Mr. Kelly differently, and less favorably than, similarly situated employees – ultimately resulting in Mr. Kelly's unlawful constructive discharge from employment.

35. The Town would not have terminated Mr. Kelly's employment, nor taken the other discriminatory and retaliatory actions against him, but for Mr. Kelly's disabilities and/or requests for reasonable accommodations.

36. Any reasons given by The Town for its treatment of Mr. Kelly were pretextual, as Mr. Kelly's work performance was excellent.

37. Mr. Kelly's termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disabilities and/or requests for accommodations.

38. As a direct and proximate result of The Town's actions, Mr. Kelly has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

39. At all times material hereto, The Town engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Kelly so as to support an award of punitive damages.

40. The above-described acts by The Town and employees and/or statutory decision-makers of The Town constitute disability discrimination and retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT II: CLAIM FOR RETALIATION
## IN VIOLATION OF THE ADA

41. Mr. Kelly incorporates herein by reference the preceding paragraphs of this Complaint.

42. At all times relevant to this Complaint, Mr. Kelly was a qualified individual with a disability, pursuant to the ADA.

43. At all times relevant, Mr. Kelly suffered from ADA-recognized disabilities, to-wit, anxiety, high blood pressure and depression for which he has been required to take daily medication. These disabilities affected his various daily life activities, including, but not limited to, sleeping, eating, breathing, and having normal circulation.

44. In the alternative, Mr. Kelly was regarded by The Town as having such impairments.

45. At all times relevant, however, Mr. Kelly could perform the essential functions of his job as Town Attorney or Town Manager, as the case may be, with or without an accommodation, depending on the specific essential function.

46. Prior to his requests for accommodations, Mr. Kelly was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of The Town. Mr. Kelly did not receive negative performance evaluations except as retaliation for having disabilities and/or asking for reasonable accommodations.

47. Mr. Kelly revealed his disabilities to his supervisors at The Town, and requested the reasonable accommodations.

48. The Town discriminated and retaliated against Mr. Kelly by refusing to appropriately engage in a dialogue with him with regard to disability accommodations, ultimately denying Mr. Kelly's accommodation requests, threatening and/or harassing

him, and treating Mr. Kelly differently, and less favorably than, similarly situated employees – ultimately resulting in Mr. Kelly's unlawful constructive discharge from employment.

49. The Town would not have terminated Mr. Kelly's employment, nor taken the other discriminatory and retaliatory actions against him, but for Mr. Kelly's disabilities and/or requests for reasonable accommodations.

50. Any reasons given by The Town for its treatment of Mr. Kelly were pretextual, as Mr. Kelly's work performance was excellent.

51. Mr. Kelly's termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disabilities and/or requests for accommodations.

52. Moreover, after his termination, The Town refused to provide Mr. Kelly his severance as referenced in the September 7, 2016 minutes.

53. The Town retaliated against Mr. Kelly regarding the denial of severance. The Town would not have denied his severance, nor taken the other discriminatory and retaliatory actions against him, but for Mr. Kelly's disabilities and/or requests for reasonable accommodations

54. As a direct and proximate result of The Town's actions, Mr. Kelly has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

55. At all times material hereto, The Town engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Kelly so as to support an award of punitive damages.

56. The above-described acts by The Town and employees and/or statutory decision-makers of The Town constitute disability discrimination and retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT III: CLAIM FOR FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

57. Mr. Kelly incorporates herein by reference the preceding paragraphs of this Complaint.

58. At all times relevant to this Complaint, Mr. Kelly was a qualified individual with a disability, pursuant to the ADA.

59. Specifically, at all times relevant, Mr. Kelly suffered from ADA-recognized disabilities, to-wit, anxiety, high blood pressure and depression for which he has been required to take daily medication. These disabilities affected his various daily life activities, including, but not limited to, sleeping, eating, breathing, and having normal circulation.

60. In the alternative, Mr. Kelly was regarded by The Town as having such impairments.

61. At all times relevant, however, Mr. Kelly could perform the essential functions of his job as Town Attorney or Town Manager, as the case may be, with or without an accommodation with respect to specific essential job functions.

62. Mr. Kelly revealed his disabilities to his supervisors at The Town, and requested reasonable accommodations of short breaks and reduced stress, among other reasonable accommodations.

63. Prior to his request for disability accommodations, Mr. Kelly was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of The Town, as he had not received negative performance reviews except in retaliation for revealing his disabilities and/or requesting reasonable accommodations.

64. The Town failed to accommodate Mr. Kelly's disabilities by refusing to appropriately engage in a dialogue with him with regard to disability accommodations, effectively denying Mr. Kelly's accommodation requests, threatening and/or harassing him, and treating Mr. Kelly differently, and less favorably than, similarly situated employees – ultimately resulting in Mr. Kelly's unlawful constructive discharge from employment.

65. The Town would not have constructively discharged Mr. Kelly from employment, nor failed to accommodate him, but for his disabilities.

66. Any reasons given by The Town for its treatment of Mr. Kelly were pretextual, as Mr. Kelly's work performance was excellent.

67. Mr. Kelly's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disabilities and/or requests for accommodation.

68. As a direct and proximate result of The Town's actions, Mr. Kelly has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

69. At all times material hereto, The Town engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Kelly so as to support an award of punitive damages.

70. The above-described acts by The Town and employees and/or statutory decision-makers of The Town constitute failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT IV: INTERFERENCE IN VIOLATION OF THE ADA

71. Plaintiff incorporates by reference herein the preceding paragraphs of his complaint.

72. At all times relevant to this Complaint, Mr. Kelly was a qualified individual with a disability, pursuant to the ADA.

73. Specifically, at all times relevant, Mr. Kelly suffered from ADA-recognized disabilities, to-wit, anxiety, high blood pressure and depression for which he has been required to take daily medication. These disabilities affected his various daily life activities, including, but not limited to, sleeping, eating, breathing, and having normal circulation.

74. In the alternative, Mr. Kelly was regarded by The Town as having such impairments.

75. At all times relevant, however, Mr. Kelly could perform the essential functions of his job as Town Attorney or Town Manager, as the case may be, with or without an accommodation with respect to specific essential job functions.

76. Mr. Kelly sought accommodations for his various disabilities. However, The Town's actions coerced Mr. Kelly to forgo accommodations to which he was otherwise entitled.

77. Specifically, Mr. Kelly did not take short breaks, as a reasonable accommodation, as he feared that he would receive written discipline or be terminated for a pretextual reason.

78. The Town failed to accommodate Mr. Kelly's disabilities by refusing to appropriately engage in a dialogue with him with regard to disability accommodations, effectively denying Mr. Kelly's accommodation requests, threatening and/or harassing him, and treating Mr. Kelly differently, and less favorably than, similarly situated employees – ultimately resulting in Mr. Kelly's unlawful constructive discharge from employment.

79. The Town would not have constructively discharged Mr. Kelly from employment, nor failed to accommodate him, but for his disabilities.

80. Any reasons given by The Town for its treatment of Mr. Kelly were pretextual, as Mr. Kelly's work performance was excellent.

81. Mr. Kelly's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful interference based upon his disabilities and/or requests for accommodation.

82. As a direct and proximate result of The Town's actions, Mr. Kelly has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

83. At all times material hereto, The Town engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Kelly so as to support an award of punitive damages.

84. The Equal Employment Opportunity Commission has issued guidance, pursuant to its authority under 42 U.S.C. § 12203(b), finding that the interference

provision of the Americans with Disabilities Act is wider in scope than the anti-retaliation provision, and is, therefore, proven by a similar set of facts as the anti-retaliation provision. *See* Equal Employment Opportunity Commission, *EEOC Enforcement Guidance on Retaliation and Related Issues*, Number 915.004 (August 25, 2016), *available at* https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=#III._ADA.

85. The above-described acts by The Town and employees and/or statutory decision-makers of The Town constitute interference with Mr. Kelly's ADA rights in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT V: BREACH OF CONTRACT

86. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

87. Plaintiff and Defendant entered into a legally binding employment contract on September 7, 2006.

88. The employment contract had been offered by The Town and duly adopted by The Town's statutory decision-makers.

89. Among several provisions of the employment contract, Mr. Kelly was due to receive nine (9) months' severance, based upon his current annual wage at the time he left The Town's employ.

90. Mr. Kelly was not paid the severance he was due at the time of his constructive discharge from employment with The Town.

WHEREFORE, Plaintiff Gregory Warren Kelly prays for judgment against Defendant Town of Abingdon, Virginia and for equitable relief, compensatory, incidental, liquidated and/or punitive damages, together with prejudgment interest from the date of Mr. Kelly's termination from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,

**GREGORY WARREN KELLY**

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*