# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **GREGORY WARREN KELLY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19CV00032 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **TOWN OF ABINGDON, VIRGINIA,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Thomas E. Strelka, L. Leigh R. Strelka, N. Winston West, IV, and Brittany M. Haddox, STRELKA LAW OFFICE, PC, Roanoke, Virginia, for Plaintiff; Ramesh Murthy and Cameron S. Bell, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Defendant.*

In this civil case, the plaintiff, a former Town Manager, asserts claims against his former employer, the Town of Abingdon, Virginia, ("Town"), under the Americans with Disabilities Act ("ADA"), along with a state-law breach of contract claim for failure to honor an alleged severance agreement. The Town has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. Because the plaintiff has not averred facts sufficient to make out plausible claims of discrimination, retaliation, failure to accommodate, or interference under the ADA, I will grant the Motion to Dismiss as to Counts I through IV. I find that the plaintiff has stated a plausible claim for breach of contract, and I will therefore deny the Motion to Dismiss as to Count V.

## I.

The Complaint alleges the following facts, which I must accept as true for purposes of deciding the Motion to Dismiss.

Kelly worked for the Town from March 2005 until May 17, 2018, when he contends he was constructively discharged. The Town entered into an employment contract with Kelly on September 7, 2006, approval of which is reflected in Town Council meeting minutes. In relevant part, the minutes state that Kelly's compensation would include "[n]ine (9) [m]onths severance pay at the current amount of the Town Manager's salary and benefits at the time of departure if serving in the capacity of Town Manager is not successful and the position of Town Attorney is not available." Compl. Ex. B at 2, ECF No. 1-3. During his employment with the Town, Kelly alleges that his performance met or exceeded the Town's legitimate expectations.

Kelly suffers from high blood pressure, anxiety, and depression, for which he has taken daily medication. These disabilities affect his various daily life activities including sleeping, eating, and breathing. Kelly alleges that his conditions were exacerbated by unprofessional and at times outrageous actions of several Town Council members and the Town's Mayor, who were Kelly's supervisors.

Kelly alleges that "he was continuously threatened with termination if he did not do as certain council members directed despite being bound by law and a strict code of local government ethics to implement only the policies enacted by the collective majority of the council." Compl. ¶ 14, ECF No. 1. According to Kelly, these threats were pretextual and the unidentified counsel members harbored animus against Kelly because of his disabilities. Kelly avers that he "has been subjected to insults, invasions of privacy, disclosure of confidential information, and profane and obscene messages from Town leadership and has been publicly ridiculed and defamed on several occasions." *Id.* ¶ 15. He filed charges of discrimination with the federal Equal Employment Opportunity Commission ("EEOC") on September 13, 2017, and December 27, 2017, although the contents of those charges are not included in the Complaint. He states in a conclusory fashion that the Town retaliated against him for filing these charges.

On January 10, 2018, Kelly's counsel sent a letter to counsel for the Town that purported to set forth accommodations requests under the ADA. The letter was sent on behalf of Kelly and two other Town employees and made the same collective requests on behalf of all three individuals. The letter did not identify any particular disabilities or tie the requests to limitations associated with disabilities. The letter states that the "overall aim of these requests is to foster a well-running office, based on the principles of mutual respect, clear communication, and having

well-defined roles within the organization." *Id*. at Ex. C. at 1, ECF No. 1-4.  The

letter sets forth the following requests:

       1. The Town Charter is a fundamental document that outlines the Council/Manager form of governance. The Charter is the bedrock upon which the Town exists today. Numerous negative issues have resulted among the parties because an individual did not understand their role as defined in the Charter. It is therefore essential that all Town Council members and Town Management have a nuanced understanding of the Charter. This is a Request that all Members of the Town Council and Town Management shall have a fundamental understanding of the Town Charter.

       2. The Town Council adopted a Code of Ethics. This is a Request that the Town Council and Town Management have a fundamental understanding of the Code of Ethics and that all parties continually work toward operating in total compliance with the Code of Ethics on a day-to-day basis.

       3. This is a Request that the Town Council acknowledge that it is inappropriate for members of Town Council to give directives to subordinate employees of Town Management. If the Town Council wishes to discuss modification of a Town employee's duties, or have any criticism regarding that employee's actions, omissions, or job duties, then the appropriate course of action would be for the member to address the issue with the appropriate supervisory employee of Town Management.

       4. This is a Request for members of Town Council to cease threatening the termination [of] a Town employee's job on a weekly, sometimes daily basis. It is understood that in the course of management, certain situations do indeed warrant the threat of termination. However, a workplace in which staff are threatened with termination many times in a six-month period is an untenable working environment.

       5. This is a Request that the Town Council give greater consideration to diversity in hiring Town personnel with an emphasis on the hiring of women in management positions.

6. This is a Request that the Town Council recognize that it is the role of the Mayor to act as liaison between Town Council and Town Management.

7. For an unknown reason, members of Town Council have consistently second-guessed a vast majority of information provided to them by Town Management. Trust appears to be an issue. Town Management works faithfully on behalf of the Town and members of Town Council. This is a Request that members of Town Council begin working together with Town Management on establishing trust between the parties.

8. This is a Request that every member of Town Council utilize courtesy and care in all communications with Town Management. Consider tone of voice and word choice.

9. This is a Request that all Town staff be treated equally in the eyes of the members of Town Council.

10. This is a Request that Town Council be mindful of the bounds of individual employees' roles within the Town structure. Staff members have consistently been directed by members of the Town Council to perform functions outside the scope of their employment. Should further direction be needed on this issue, this is a Request for written polices or job descriptions to clarify roles, duties and responsibilities.

11. This is a Request that the Town Council acknowledge that this is a team. It is within the best interest of the Town for Town Council to support and defend Town Management, not fight Town Management.

12. This is a Request that should a dearth of written policies effectuating the above requests not exist at the time these requests were submitted, that Town Council, working with Town Management, work in conjunction to draft written standing policies that provide guidance to all individuals.

*Id.* at 2–3.  Approximately three months later, counsel representing the Town sent Kelly a letter in response saying that the Town would engage in an interactive process with him.  When Kelly then attempted to communicate with the Town, he received no further reply.

Kelly asserts that "due to the severe and pervasive hostile work environment targeting individuals with disabilities, [he] had no alternative but to resign his employment."  Compl. ¶ 20, ECF No. 1.  He alleges that he "could perform the essential functions of his job as Town Attorney or Town Manager, as the case may be, with or without an accommodation, depending on the specific essential function."  *Id.* at ¶ 31.  He does not identify the essential functions of those positions.  He alleges that he "revealed his disabilities to his supervisors" but does not allege the date on which the revelation occurred or indicate which supervisors he informed.  *Id.* at ¶ 33.

Count I of the Complaint is a claim of discrimination in violation of the ADA.  Kelly states that the Town discriminated against him "by refusing to appropriately engage in a dialogue with him with regard to disability accommodations, ultimately denying [his] accommodation requests, threatening and/or harassing him, and treating [him] differently, and less favorably than, similarly situated employees."  *Id.* at ¶ 34.

Count II is a claim for retaliation in violation of the ADA. In this count, Kelly again states that the Town retaliated against him "by refusing to appropriately engage in a dialogue with him with regard to disability accommodations, ultimately denying [his] accommodation requests, threatening and/or harassing him, and treating [him] differently, and less favorably than, similarly situated employees." *Id.* at ¶ 48. In addition, Kelly alleges that the Town's failure to pay him a severance was retaliation for his requests for reasonable accommodations.

Count III is a claim for failure to accommodate in violation of the ADA. In this count, he alleges that he "requested reasonable accommodations of short breaks and reduced stress, among other reasonable accommodations." *Id.* at ¶ 62. He does not indicate when or to whom he made these requests.

Count IV is a claim for interference under the ADA. Kelly alleges that "[t]he Town's actions coerced [him] to forego accommodations to which he was otherwise entitled." *Id.* at ¶ 76. "Specifically, Mr. Kelly did not take short breaks, as a reasonable accommodation, as he feared that he would receive written discipline or be terminated for a pretextual reason." *Id.* at ¶ 77.

Count V is a breach of contract claim under Virginia law. Kelly asserts that the Town had a contractual obligation to pay him nine months' salary when his employment ended. The Town never made the severance payment.

The Town has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion to Dismiss has been fully briefed and orally argued and is ripe for decision.

II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In order to survive a motion to dismiss, the plaintiff must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts. *Id*. A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

*A. Timeliness of ADA Claims.*

The Town first argues that to the extent any of Kelly's ADA claims are based on allegations that were contained in his first two EEOC charges, those claims are untimely because Kelly failed to file suit within 90 days of receiving Dismissal and Notice of Rights letters from the EEOC regarding those charges. Kelly responds that all three of his EEOC charges pertained to the same ongoing course of conduct, and the continuing violation doctrine therefore renders his claims timely because he filed suit within 90 days of receiving a Dismissal and Notice of Rights letter regarding his third and final EEOC claim.

An employee who files a charge with the EEOC alleging violation of rights under the ADA must file suit in federal court within 90 days of the date the EEOC notifies the employee that the charge has been dismissed. 42 U.S.C. § 2000e-5(f)(1). The plaintiff concedes that he did not file suit within 90 days of receiving Dismissal and Notice of Rights letters related to his first two EEOC charges. A number of courts have held that when a plaintiff has filed a series of EEOC charges but has not filed suit within 90 days of dismissal of the earlier-filed charges, the notice of dismissal of the final charge does not serve to revive time-barred claims raised in the earlier charges. *See, e.g.*, *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 203 (E.D.N.Y. 2014); *Woods v. Lancaster Indep. Sch. Dist.*, 834 F. Supp. 2d 512, 516

(N.D. Tex. 2011); *Felix v. City & Cty. of Denver*, 729 F. Supp. 2d 1243, 1250–51 (D. Colo. 2010).

"[T]he continuing violation theory does not eliminate the requirement that a plaintiff file a judicial action within ninety days of receipt of notice of the right to sue." *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991). The continuing violation doctrine, which tolls the statute of limitations for filing a claim with the EEOC, is meant to ensure "that meritorious discrimination claims are not pretermitted because the claimant needed to experience a pattern of repeated acts before she could be expected to realize that the individual acts were discriminatory in nature." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012).

> This purpose would not be served by extending the 90-day filing period . . . . By the time that she receives a right-to-sue notice, a claimant is necessarily aware of the defendant's discriminatory conduct; she has by then already recognized the occurrence of discrimination and filed her administrative claim.

*Id.*; *see also Gibbs v. Gen. Motors Corp.*, 104 F. App'x 580, 582 (7th Cir. 2004) (unpublished) ("Gibbs cannot avail herself of the continuing-violation doctrine because she obviously believed that the time-barred acts were discriminatory when she filed EEOC charges in early 2001.").

I agree with these decisions and am inclined to conclude that the claims raised in Kelly's first two EEOC charges are now time-barred. The problem is that

the Complaint contains no information about the claims of those two EEOC charges, nor does it set forth the contents of Kelly's third EEOC charge, on which this suit is presumably based. I therefore cannot rule on whether any or all of Kelly's claims asserted in this case are time-barred. The plaintiff has not provided the court with the information necessary to find that he timely filed suit on the claims he has asserted here.

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Therefore, the question of whether a claim is time-barred usually cannot be resolved on a motion to dismiss, except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* Those circumstances are not present here, so I will deny the Motion to Dismiss on statute of limitations grounds.

### B. Count I: Discrimination.

The ADA protects qualified individuals with disabilities from discrimination on the basis of their disabilities. 42 U.S.C. § 12112(a); *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 278-79 (4th Cir. 2004). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

> In an ADA wrongful discharge case, a plaintiff establishes a *prima facie* case if he demonstrates that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

*Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001).

In this case, Kelly claims that he was constructively discharged. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (internal quotation marks and citation omitted). In such a situation, the law will treat the employee's resignation as a discharge. *Id.*

"In assessing intolerability, the frequency of the conditions at issue is important." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019). "[W]hen the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Id.* "Further, difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign." *Id.* The question is not whether resigning was the plaintiff's wisest or best choice under the circumstances, but rather whether a reasonable person in the plaintiff's position

"would have had *no choice* but to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (internal quotation marks and citation omitted). This standard is higher than the severity or pervasiveness required to prove a hostile environment harassment claim. *Id.*

Kelly's allegations supporting his constructive discharge theory are vague at best. He alleges that he was continuously threatened with termination and was "subjected to insults, invasions of privacy, disclosure of confidential information, and profane and obscene messages from Town leadership and has been publicly ridiculed and defamed on several occasions." Compl. ¶ 15, ECF No. 1. He cites no specific instances in support of these conclusory allegations, nor does he allege who subjected him to these hardships. He contends that the Town refused to engage in an interactive process with him to determine appropriate accommodations for his disabilities. Finally, he asserts that the Town discriminated or retaliated against him either for filing EEOC charges or because of his disabilities and accommodations requests, or both.

To survive a motion to dismiss, Kelly's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp.*, 550 U.S. at 555, 570. The sparse, imprecise allegations set forth in the Complaint do not satisfy that test. Kelly has not plausibly alleged that he was constructively

discharged.  As this is a required element of his disability discrimination claim under the ADA, I will dismiss Count I for failure to state a claim upon which relief can be granted.

Even if the allegations were sufficient to establish a constructive discharge, Count I would fail because Kelly has not plausibly alleged that his job performance met his employer's legitimate expectations.  Kelly's allegations on this point are entirely conclusory.  A plaintiff must do more than simply recite the elements of his cause of action.  Here, Kelly pleads no facts in support of his claim that he was performing to his employer's expectations.  Similarly, he has not adequately alleged that he could perform the requirements of his job with or without reasonable accommodations.  He therefore has not plausibly alleged that he is a qualified individual with a disability.  Again, he merely recites this legal element without providing any details about the essential functions of his position, how his disabilities affected his ability to perform those essential functions, or how reasonable accommodations might have helped him to perform those functions.  For these reasons as well, I will grant the Motion to Dismiss as to Count I.

Finally, aside from conclusory assertions, there are no factual allegations in the Complaint that raise a reasonable inference of disability-based discrimination.  Kelly cannot rely solely on his own speculation that he was mistreated due to his disabilities.  He must allege some facts tending to show that the mistreatment he

claims to have suffered was causally related to his disabilities. Because he has not done so, his claim of disability discrimination must be dismissed.

## *C. Count II: Retaliation.*

To establish a claim of retaliation under the ADA, a plaintiff must show that "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Kelly's retaliation claim suffers from shortcomings similar to those that plague his discrimination claim.

The first adverse action alleged by Kelly is constructive discharge. As I have already held, the allegations in the Complaint are insufficient to establish the intolerability necessary to establish a constructive discharge. Kelly next alleges that the Town retaliated against him for requesting reasonable accommodations by failing to pay him the severance money he was owed. While this could amount to an adverse action supporting a retaliation claim, Kelly must plausibly allege that there was a causal link between his request for accommodations or other protected activity and the Town's refusal to issue a severance payment. The Complaint contains nothing more than conclusions on this point, stating only that "[t]he Town retaliated against Mr. Kelly regarding the denial of severance" and "would not have denied his severance . . . but for Mr. Kelly's disabilities and/or requests for

reasonable accommodations." Compl. ¶ 53, ECF No. 1. These boilerplate statements do not meet federal pleading standards. Because Kelly has failed to state a plausible claim of retaliation under the ADA, I will grant the Motion to Dismiss as to Count II.

*D.  Count III:  Failure to Accommodate.*

The ADA requires an employer to "make reasonable accommodations for an applicant or an employee's disability." *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008). The applicable regulation provides:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3). To state a claim for failure to accommodate, a plaintiff must plausibly allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal quotation marks, alterations, and citations omitted).

Kelly's failure to accommodate claim must be dismissed because he has not alleged facts showing that he could perform the essential functions of his job with

reasonable accommodations. As noted above, he does not even allege what the essential functions of his job were, nor does he state if or how his disabilities impacted him in the workplace. While he references a request to take short breaks, he does not explain why short breaks were necessitated by his disabilities or how they would have helped him to perform the essential functions of his job. *See id.* (explaining that reasonableness of the request is only one part of the inquiry, and the plaintiff "must also show that with this accommodation he was a qualified individual — that is, he could have performed the essential functions of his position").

Kelly suggests that the Town is liable for failure to accommodate simply because it did not engage in an interactive process with him. The Fourth Circuit has rejected that argument. "[E]ven if an employer's duty to engage in the interactive process is triggered, the employer's liability for failing to engage in that process may collapse for a number of reasons," including "if the employee cannot identify a reasonable accommodation that would have been possible" or if the employer and employee could not have found a reasonable accommodation that would have allowed the employee to perform the essential job functions. *Id.* at 347. "[A]n employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Walter v. United Airlines, Inc.*, No. 99-2622, 2000 WL 1587489, at *4 (4th Cir. Oct. 25,

2000) (unpublished).  Instead, the plaintiff is required to show that "the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee." *Id.*

While the January 10, 2018, letter from Kelly's counsel purports to set forth accommodation requests, the requests are not tied to limitations caused by any particular disabilities and are not even specific to Kelly.  Rather, the requests appear to address general workplace grievances.  Kelly has not alleged any facts to suggest that he and the Town could have arrived at reasonable accommodations had they engaged in an interactive process.  He has not alleged the limitations caused by his disabilities or the job functions they affected.  The scant allegations in the Complaint are insufficient to state a plausible failure-to-accommodate claim. I will grant the Motion to Dismiss as to Count III.

### E.  Count IV:  Interference.

The ADA provides that

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of  his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).  There are few appellate decisions construing this subsection.  The Seventh Circuit has found that a plaintiff alleging ADA discrimination must show:

> (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate.

*Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017). "Protected activities are those statutorily protected under the ADA," including "formal complaints of discrimination." *Id.* at 551. A request for an accommodation is protected activity. *See Haulbrook*, 252 F.3d at 706. The EEOC has issued guidance in which it sets forth several examples of conduct that would be considered interference. The example most applicable here is "coercing an individual to relinquish or forgo an accommodation to which he or she is otherwise entitled." U.S. Equal Emp. Opportunity Comm'n, *Enforcement Guidance on Retaliation and Related Issues*, No. 915.004, 2016 WL 4688886, at *26 (2016).

As with his other ADA claims, Kelly has not alleged enough facts to raise his interference claim above the speculative level. While he claims he requested short breaks and reduced stress, he does not indicate when or to whom he made those requests. Assuming that those requests qualify as protected activity, the Complaint contains no factual allegations showing that the Town coerced, threatened, intimidated, or interfered on account of Kelly's protected activity. Kelly makes a vague allegation that he was threatened with termination, but that allegation is in no way tied to his request for accommodations, either temporally or

in any other sense. Kelly's assertion that he did not take short breaks because "he feared that he would receive written discipline or be terminated for a pretextual reason," Compl. ¶ 77, ECF No. 1, speaks only to his own subjective mindset, not to any action of the Town.

Without further details regarding Kelly's alleged request for accommodations and the Town's treatment of him, I cannot find that Kelly has stated a plausible claim for interference under the ADA. I will therefore grant the Motion to Dismiss as to Count IV.

### *F. Count V: Breach of Contract.*

Because I have dismissed Kelly's ADA claims, which provide the basis for federal question jurisdiction, I could decline to exercise supplemental jurisdiction over the state law breach of contract claim. 28 U.S.C. § 1367(c)(3). I will exercise supplemental jurisdiction over Count V, however, because plaintiff's counsel indicated several times during oral argument that he intends to move to amend the Complaint to add further factual allegations in support of the ADA claims. In light of that stated intention, I find that retaining jurisdiction over this case will best conserve judicial and party resources.

Under Virginia law, the elements of a breach of contract claim are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff

caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (internal quotation marks and citations omitted). The Town argues that Kelly cannot show a legally enforceable obligation because a Virginia statute states that hiring of employees of localities "shall be without a definite term." Va. Code Ann. § 15.2-1503(A). The Town Charter similarly states that employees may be dismissed at any time.

I am unpersuaded by this argument. The employment agreement as summarized in the Town Council meeting minutes does not purport to set a term of years for Kelly's appointment or to render him anything other than an at-will employee. The agreement does not indicate that Kelly can only be terminated for cause. It simply states that "if serving in the capacity of Town Manager is not successful and the position of Town Attorney is not available," Kelly will be entitled to severance pay equal to nine months of his current salary and benefits. Compl. Ex. B at 2, ECF No. 1-3.

It is not clear from the minutes what the parties intended by the phrase "not successful." At oral argument, plaintiff's counsel suggested that the Town possesses a written contract, executed by the Town and Kelly. The actual contract may be more precise than the summary contained in the meeting minutes, and Kelly will presumably gain access to it in discovery. If the written contract is ambiguous, parol evidence gathered during discovery may shed some light on what

the parties intended.  But the meeting minutes clearly indicate that the parties agreed to a severance.  Based on Kelly's resignation and the alleged tensions with his supervisors, it is plausible that Kelly's tenure as Town Manager was not successful and that the Town therefore owed him a severance payment, which it did not pay.  At this early stage of the proceedings, the allegations are enough to support a claim of breach of contract.  I will therefore deny the Motion to Dismiss as to Count V.

III.

In summary, I find that the present Complaint is legally insufficient except for the claim of breach of contract.  Accordingly,  the Motion to Dismiss, ECF No. 3, is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED as to Counts I, II, III, and IV, and it is DENIED as to Count V.  Any request to amend the Complaint must be sought by a written motion including as an exhibit the proposed Amended Complaint, which motion must be filed within 14 days hereof.

It is so **ORDERED**.

ENTER:  February 3, 2020

/s/  JAMES P. JONES
United States District Judge